IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LATANYA R. LEWIS,                    *

    Plaintiff,                   *

vs.                                  *      CASE NO. 4:07-CV-114 (CDL)

PETE GEREN, Secretary of the         *
Army, Department of Emergency
Services and Fort Benning,           *

    Defendant.                   *

_____      *

O R D E R

    This action arises from the alleged breach of a Negotiated Settlement Agreement that Plaintiff entered into with Defendant after Defendant allegedly failed to select Plaintiff for a supervisory police position in May of 2005 due to her race and gender. In addition to her breach claim, Plaintiff asserts federal claims for race and gender discrimination arising from the May 2005 non-selection. Presently pending before the Court is Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 26).

    Defendant maintains that Plaintiff released all claims arising from the May 2005 non-selection when she voluntarily entered into the Negotiated Settlement Agreement. Defendant further contends that it substantially complied with the terms of the Negotiated Settlement Agreement. Arguing that no genuine issues of material fact exist to be tried, Defendant seeks judgment as a matter of law. Since

1

Defendant relies upon evidence beyond the pleadings in support of its motion, the Court must evaluate Defendant's motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).  Plaintiff, who is represented by counsel, did not bother to respond to Defendant's motion.  For the following reasons, Defendant's motion is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted).  In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  A movant is not required to come forth with evidence negating the nonmovant's claim. *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324.  The nonmoving party must "go beyond

2

the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324. A nonmovant is not required to produce evidence in a form that would be admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.*; *accord* Fed. R. Civ. P. 56(e)(1).

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant-there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

FACTUAL BACKGROUND[1]

## I.   The Negotiated Settlement Agreement

Plaintiff began her employment with Defendant in April of 2001 as a supervisory security guard. (Def.'s Statement of Undisputed Material Facts ¶ 1 [hereinafter SOF].) Plaintiff applied for a supervisory police position in May of 2005 and was not selected. (*Id.* ¶ 2.) Subsequently, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") administrative complaint concerning the May 2005 non-selection, alleging that Defendant failed to select her for the supervisory police position due to her race and gender. (Ex. 3 to SOF, Formal Compl. of Discrimination 1, June 17, 2005.)

On November 7, 2005, the parties entered into a Negotiated Settlement Agreement ("NSA") resolving the matters alleged in Plaintiff's EEOC administrative complaint. (SOF ¶ 3; *see* Ex. 1 to SOF, Negotiated Settlement Agreement, Nov. 7, 2005 [hereinafter NSA].) Under the terms of the NSA, Defendant agreed to the following:

---

[1] Plaintiff failed to respond to Defendant's Statement of Undisputed Material Facts. "All material facts contained in the moving party's statement which are not specifically controverted by the [nonmoving party] in [nonmoving party's] statement shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. R. 56. Therefore, all facts in Defendant's Statement of Material Facts are deemed admitted for the purposes of this Order. Notwithstanding these "admissions," the Court acknowledges its duty to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted). The Court reviewed Defendant's citations to the record and bases its recitation of the facts upon that review.

     a.   To actively seek a position on Fort Benning for which Complainant [was] qualified outside of the Directorate of Emergency Services (DES), and to concur in her reassignment to such position.  As an incentive to another activity to accept Complainant, DES agrees to transfer the funds to cover the first year's salary for such position to the accepting activity.  This obligation shall continue for no more than one year following the signing of this agreement[;]

     b.   To provide Complainant with bimonthly status reports on the Agency's progress in finding Complainant a new position.  This obligation shall continue for no more than one year[] following the signing of this agreement[;][2]

     c.   To require personnel in supervisory positions at DES to attend diversity training within six months following the execution of this agreement.

(NSA ¶ 3.)  In turn, Plaintiff agreed to "waive the right to pursue administrative or judicial action in any forum concerning the matters raised in th[e] [EEOC administrative] complaint."  (NSA ¶ 7; *see id.* ("Complainant's signature on this agreement constitutes full and complete settlement of the [EEOC administrative] complaint[] identified in the caption.").)

In the event Plaintiff believed that Defendant had failed to comply with the terms of the NSA, Plaintiff was to follow the procedural guideline provided therein:

Complainant shall notify the [Equal Employment Opportunity Compliance and Complaints Review Agency ("EEOCCRA")] . . . in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance.  A copy should be sent to the Fort

---

[2]Under the terms of the NSA, Defendant was required to send Plaintiff status reports in January, March, May, July, September, and November of 2006.  (SOF ¶ 28; *see* Norfolk Decl. ¶ 3, Apr. 14, 2009.)

> Benning, EEO Manager.  Complainant may request that the terms of the agreement be specifically implemented, or alternatively, the complaint be reinstated for further processing from the point processing ceased under the terms of th[e] [NSA].  If the EEOCCRA has not responded to Complainant in writing, Complainant may appeal to the [EEOC] for determination as to whether or not the Army has complied with the terms of th[e] [NSA].  Complainant may file such an appeal 35 days after service of the allegation of noncompliance upon EEOCCRA but no later than 20 calendar days after receipt of the Army determination.

(NSA ¶ 8; *see* SOF ¶ 9.)

On November 13, 2006, Plaintiff notified the EEOCCRA by letter that she considered Defendant to be in breach of the NSA.  (SOF ¶¶ 10-11.)  The EEOCCRA found that Defendant had complied with all terms of the NSA.  (*Id.* ¶ 12.)  Plaintiff filed an appeal with the EEOC, and on April 20, 2007, the EEOC affirmed the EEOCCRA's conclusion that Defendant had not breached the NSA.  (*Id.* ¶¶ 13-15; *see generally* Ex. 2 to SOF, EEOC Decision, Apr. 20, 2007.)

## II.  Plaintiff's Claims

In her Amended Complaint, Plaintiff alleges the following claims: (1) discrimination and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Am. Compl. ¶¶ 23-27, 31); (2) discrimination and retaliation under 42 U.S.C. § 1981 ("§ 1981") and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983") (*id.* ¶¶ 28-30); (3) hostile work environment and constructive discharge in violation of Title VII (*id.* ¶ 21); (4) negligent retention and supervision and intentional infliction of

emotional distress (*id.* ¶¶ 32-41); (5) breach of the NSA (*id.* ¶¶ 19-20); (6) punitive damages (*id.* ¶¶ 42-44); and (7) attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 (*id.* ¶¶ 45-46).

DISCUSSION

As discussed below, the Court finds that Defendant is entitled to summary judgment as to all of Plaintiff's claims because (1) Plaintiff voluntarily released and waived all claims arising from and related to the May 2005 non-selection, and (2) Defendant substantially complied with the terms of the NSA.

I.   **Voluntary Waiver of All "Matters" Arising from the May 2005 Non-Selection**

As a general rule, "one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984) (per curiam); *see, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n.15 (1974) (noting that employee may waive cause of action as part of settlement agreement as long as employee's consent is voluntary and knowing). Defendant contends that the NSA bars Plaintiff from bringing any subsequent litigation based upon the underlying May 2005 non-selection.   The Court agrees.

Here, Plaintiff entered into the NSA on November 7, 2005.  (Am. Compl. ¶ 17 ("On or about November 7, 2005, Plaintiff and Defendant entered into a settlement agreement regarding the discriminatory promotion practices.").)   Under the terms of the NSA, Plaintiff

agreed to waive the right to pursue judicial action concerning any "matters" which arose in May of 2005 and which dealt directly with Defendant's alleged discriminatory promotion practices.  (*See* NSA ¶ 7.)  Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to conclude that she signed the NSA as a result of fraud or duress, or that her consent to the NSA was not voluntary or knowing.

Therefore, the Court finds that Plaintiff voluntarily waived any claims arising from the May 2005 non-selection and related to Defendant's alleged discriminatory promotion practices.  Accordingly, Defendant is entitled to summary judgment as to each of Plaintiff's discrimination claims.[3]

## II.  Breach of Negotiated Settlement Agreement

The only way for Plaintiff to escape the consequences of her release of her claims is to construct an argument that Defendant breached the NSA.  The undisputed facts establish that Plaintiff

---

[3]The Court notes that even if Plaintiff's voluntary waiver of all "matters" arising from the May 2005 non-selection did not encompass her state law tort claims, Defendant would nevertheless be entitled to sovereign immunity because Plaintiff failed to point the Court to any evidence to demonstrate that she timely and properly exhausted her state law tort claims administratively as required under the Federal Tort Claims Act.  *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); *see e.g., Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) ("Because [t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies, the district court lacks subject matter jurisdiction over prematurely filed suits." (alteration in original) (internal quotation marks omitted)).

cannot carry this burden, which may explain why she did not even try. It is well settled that upon an alleged breach of a negotiated settlement agreement, an employee may bring an action for breach of that agreement.  *See Kirby*, 736 F.2d at 664 (recognizing federal court jurisdiction to enforce settlement agreements in discrimination actions brought pursuant to Title VII).  "A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of . . . general [state] contract law." *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987); *cf. Jones v. Wynne*, 266 F. App'x 903, 906 (11th Cir. 2008) (per curiam) (affirming district court's conclusion that plaintiff had no claim for breach after applying state law to the terms of the negotiated settlement agreement).

In this case, Plaintiff alleges in her Amended Complaint that Defendant "willfully refused and failed to comply with the terms of the [NSA]." (Am. Compl. ¶ 20.)  Defendant contends that it is entitled to summary judgment because Plaintiff failed to point the Court to any evidence that would lead a reasonable factfinder to conclude that Defendant breached the NSA.  The Court agrees.

First, Plaintiff alleges that Defendant breached the NSA because it failed to search actively for an employment position for her outside of the DES.  However, the undisputed evidence before the Court reveals that Dan Smith, the Human Resources Specialist with the Army's Civilian Personnel Advisory Center ("CPAC"), conducted monthly

canvasses of Human Resources personnel at regularly scheduled CPAC staff meetings to determine whether there were any available positions for Plaintiff. (SOF ¶¶ 20-22; Smith Decl. ¶¶ 1-2, 4, Apr. 14, 2009.)  The undisputed evidence further reveals that Mr. Smith continued to check for available positions for Plaintiff through November 6, 2007. (SOF ¶ 26; *see* Smith Decl. ¶ 6.)  Therefore, the Court finds that Defendant did not breach this aspect of the NSA.[4]

Next, Plaintiff alleges that Defendant breached the NSA because it failed to provide her with bimonthly status reports in January, September, and November of 2006.[5]  Although Plaintiff did not receive the September and November 2006 status reports, the undisputed evidence establishes that extenuating circumstances caused this failure and that Defendant otherwise substantially complied with the NSA.  Specifically, the Civil Division Chief for the Office of the Staff Judge Advocate died on August 9, 2006, requiring Anne Norfolk, the Labor Counselor for the United States Army Infantry Center, to assume his duties. (SOF ¶ 33; *see* Norfolk Decl. ¶ 7.)  In addition, Ms. Norfolk herself was hospitalized for three days in September of

---

[4]To the extent that Plaintiff alleges that Defendant breached the NSA because it failed to consider her for a Human Resources Assistant position in March 2006, the Court finds that this allegation is untimely because Plaintiff notified the EEOC more than thirty days after Plaintiff knew of the alleged noncompliance.  *See* 29 C.F.R. § 1614.504(a) ("If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance.").

[5]Plaintiff received the January 2006 status report late. (SOF ¶ 30.)

2006 and remained out of work for an additional ten days.  (SOF ¶ 34;
*see* Norfolk Decl. ¶ 8.)  Furthermore, despite Defendant's failure to
provide Plaintiff with all bimonthly status reports, Defendant
continued fulfilling its obligation to search for an employment
position for Plaintiff through November 26, 2007.  (SOF ¶ 38; *see*
Smith Decl. ¶ 6.)  "[T]he general rule in determining contract
compliance is substantial compliance, not strict compliance."
*Lager's, LLC v. Palace Laundry, Inc.*, 247 Ga. App. 260, 261-62, 543
S.E.2d 773, 775 (2000).  Therefore, the Court finds that Defendant
did not breach this requirement under the NSA.

Lastly, Plaintiff alleges that Defendant breached the NSA
because it failed to conduct diversity training for its employees
within six months following the execution of the NSA.  The undisputed
evidence before the Court reveals that Winifred Torain, from the Fort
Benning EEO office, provided EEO Awareness and Diversity Training to
the relevant DES employees in February and March of 2006, well within
six months of the execution of the NSA.  (SOF ¶¶ 41-45; *see* Torain
Decl. ¶ 2, Apr. 13, 2009.)  The evidence further reveals that the
diversity training was specifically augmented to comply with the NSA,
and that the training involved identifying strategies to facilitate
understanding and encourage diversity in the workplace.  (SOF ¶¶ 46-
47; *see* Torain Decl. ¶¶ 3-4.)  Ms. Torain provided the diversity
training during both February and March of 2006 in order to
accommodate employees' different work schedules.  (SOF ¶ 44.)  No

evidence exists that any employees did not attend the diversity training. (*Id.* ¶ 43; *see* Pl.'s Dep. 63:22-25, Feb. 6, 2009.) Therefore, the Court finds that Defendant did not breach this requirement under the NSA. Accordingly, because Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to conclude that Defendant breached the NSA, Defendant is entitled to summary judgment as to Plaintiff's breach claim.[6]

                              CONCLUSION

     As discussed above, the Court finds that Plaintiff released and waived all claims arising from and related to the May 2005 non-selection.  The Court further finds that Defendant substantially complied with all terms of the NSA.  Accordingly, Defendant's Motion for Summary Judgment (Doc. 26) is granted in its entirety.


     IT IS SO ORDERED, this 2nd day of September, 2009.


                              S/Clay D. Land
                              CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE

_____

     [6]To the extent that Plaintiff also alleges that she was unlawfully retaliated against, subjected to a hostile work environment, or was constructively discharged from her employment with Defendant based upon Defendant's alleged breach of the NSA (*see* Am. Compl. ¶¶ 21, 23-31), the Court rejects these claims, having found that Defendant did not breach the NSA.

                                   12